## PITNEY et al. v. BERGE et al.

No. 20941.   Opinion Filed March 8, 1932.

Rehearing Denied May 24, 1932.

J. Randall Connell, Harper E. Osborne, and G. H. Montgomery, for plaintiffs in error.

H. A. Brooks and E. C. Armstrong, for defendants in error.

KORNEGAY, J.   This is a suit to clear title to land in McCurtain county, sections 21 and 22, township 3 south, range 23 east. There have been four lawsuits that are referred to in the proceeding involving the rights of the parties to this land.   All of the litigants are residents of Illinois.   Practically every witness is a resident of the state of Illinois.

The first lawsuit in Illinois was a mortgage foreclosure in which Frank L. Pitney and his wife, Clara C. Pitney, were a portion of the defendants.   It resulted in a deficiency judgment for $4,924.35 against them.   It was in favor of a man by the name of Mather, and was rendered on the 6th of October, 1924.   Over a year afterwards, according to this record, it was assigned to the present defendants in error, and they brought an action in the district court of Choctaw county against Frank L. Pitney, a resident of Illinois, and attached the land.   The land, however, at that time did not appear on the records to belong to him, and there was on record a mortgage on it, made in 1922, securing $15,000, signed by Frank L. Pitney, payable to Royce A. Kidder.   Apparently without getting any personal service in this state, the Choctaw county district court rendered a judgment, finding the amount due from Frank L. Pitney to the assigned holder of this Illinois judgment, and condemned the land to the satisfaction of the claim, followed by a sale of the land and its being bid in by the present defendants in error. The land was worth about $4,000 at this time, and was purchased for $2,750.   The date of the attachment order is May 20, 1926.

The sheriff made return that he received the attachment order on the 20th of May, 1926, and had attached sections 21 and 22, township 3 south, range 23 east, and that he could not find the defendant Frank L. Pitney in his county. He made return that he could not find any property of Frank L. Pitney in his county.

With this return, on the 5th of September, 1926, a judgment entry was filed, signed by the district judge who tried this case, showing an appearance of the plaintiff by attorneys, McLendon & McLendon, and no appearance by attorney or in person by the defendant, and a recital of notification of the defendant of the pendency of the action by "service of personal summons," on the 17th of June, 1926, requiring an answer within 60 days from that date, and the calling of the defendant three times in open court and his failure to appear, and an order that the allegations of the plaintiff's petition be taken as confessed.

There is a further finding that the defendant Frank L. Pitney was a nonresident of the state of Oklahoma, and that the defendant owned property located in McCurtain county, and that the property had been attached, and that the defendant was duly and regularly notified more than 60 days of the pendency of the action, and of the levying of the attachment as required by law.   The court found the service legal and in proper form, and that the attachment was legal.   The attached property was ordered to be sold to satisfy the amount found due, and it was further ordered that after the property was sold, the defendant Frank L. Pitney, and everybody claiming under him since the action began, be barred and foreclosed from any claim to the land.   Writ of assistance was ordered.   This judgment is set out in one of the answers attacking the proceedings. A careful consideration of the pleadings and admissions of the parties shows that there was not much dispute over the facts.

A new claimant to the property was

discovered during the progress of the trial, and being present he was made a defendant, and immediately the plaintiff's attorney announced the disclaiming by the new claimant, Mr. John R. Russell, of any interest in the land. This Mr. Russell and Mr. Phelps, according to the evidence, had bought a farm from Frank L. Pitney in Illinois on credit. The record is not clear as to whether they were clothed with legal title, though indicative of the fact that they merely held it by contract, on which they owed $10,000 to Frank L. Pitney, and on which $5,000 was paid when the land was exchanged for the Oklahoma land here in controversy, and some land in Canada, leaving a balance due Frank L. Pitney of $5,000 and some interest. In the exchange the title to the Oklahoma land was transferred by its former holder to Frank L. Pitney, and sometime thereafter, as a means of utilizing his interest therein as collateral to a $10,000 indebtedness to the City National Bank of Dixon, Ill., he executed a mortgage to Royce A. Kidder upon the Oklahoma land and promissory notes to the amount of $15,000, due at various times thereafter, payable to the order of Royce A. Kidder, with usual interest coupons, and had the mortgage recorded the 20th of February, 1922, in the recorder's office for McCurtain county. The holder of the notes indorsed them in blank and returned them to Pitney, together with the mortgage, and also executed a release in blank and returned that to Pitney.

Pitney proceeded to use the notes as collateral to his indebtedness to the bank, which later became due, and was taken up for him by his brother, Henry C. Pitney, and the notes transferred from the bank's vaults to Henry C. Pitney's box, as collateral security, as claimed by the Pitneys, to the repayment of the money paid by Henry C. Pitney for the benefit of Frank L. Pitney. It was admitted that taxes were paid by Phelps, one of the owners of the property, subject to the amount due Frank L. Pitney for the balance of the purchase of the Illinois land, up to the year 1925, and thereafter Henry C. Pitney paid the taxes up to the time of the trial of this case.

A motion for new trial was filed upon the ground of findings being unwarranted, being contrary to law, and the judgment being unwarranted, and the evidence not being sufficient to support the finding and judgment, and errors of law occurring at the trial, and the order overruling the motion for new trial is denominated a statement of facts, and is as follows:

"Burge brought an action on a foreign judgment against Frank L. Pitney, Royce A. Kidder and others, and attached certain lands in McCurtain county. Judgment was rendered in favor of Burge, the attachment sustained, and the land sold at a sheriff's sale to satisfy the judgment lien. Burge bought the land at the sale and became the record owner thereof. He then brought this action to quiet his title against Henry C. Pitney, a brother of Frank L. Pitney, who claimed to have a mortgage on the land. The land was owned by two men, John W. Russell and John Phelps. Russell and Phelps owed Frank L. Pitney $5,000, and Frank L. Pitney was the legal and record owner of the land, holding legal title to the land as security for this $5,000. While the legal title was in Frank L. Pitney he executed several promissory notes in the sum of $15,000 and a mortgage on the land in question, making the notes payable to Royce A. Kidder. Royce A. Kidder indorsed said $15,000 in notes without recourse and at the same time he executed a release of the mortgage and returned them to Frank L. Pitney. Frank L. Pitney caused the mortgage to Royce A. Kidder, after it had been returned to him, Pitney, together with the notes and release, to be recorded in McCurtain county, but withheld the release of mortgage from the record. Sometime after this transaction between Frank L. Pitney and Royce A. Kidder, Frank L. Pitney borrowed $10,000 from a bank in Illinois. At the time he borrowed this money from the Illinois bank, he tendered the $15,000 Kidder notes as security for the loan. The banker said to him that he did not care for the security, but accepted the mortgage and the release of mortgage and put them in the bank files. Sometime after this transaction, Frank L. Pitney and his brother, Henry C. Pitney, went into the bank, and Henry C. Pitney gave his note to the bank, and the bank surrendered Frank L. Pitney's to him, Frank L. Pitney. After Frank's note had been paid by Henry C. Pitney's giving his note to the bank, Frank L. offered Henry C. the $15,000 Kidder notes and the release of mortgage. Henry C. said he did not want any security, but after some insistence by Frank L., Henry C. took the notes and the release of mortgage, but made no examination of them, did not seem to know how many notes there were, nor their denomination. Henry C. took no note from his brother, Frank L., and it is not in evidence that he had any book account of the transaction. Frank L. paid Henry C. some money after the bank transaction, and borrowed other money from him, but as to the amount he paid or borrowed, there is nothing definite.

"This action is to set aside the mortgage from Frank L. Pitney to Royce A. Kidder as being a fraud on the creditors of Frank L. Pitney, and especially Burge, the judgment creditor.

"Plaintiffs contend, first: That there being no consideration passing from Kidder to Frank L., the notes and mortgage securing them were voidable by Frank L. and by his creditors, the plaintiffs herein; and second; that the mortgage having been released by Kidder at the time of its execution, there was no mortgage, that if any lien were created on the land it was extinguished by the release; and third; that the transfer of the notes by Frank L. to his brother, Henry C., was without a fair and valuable consideration, in bad faith, and for the purpose of hindering, delaying, and defrauding plaintiff, the creditor of Frank L.

"First proposition: I am of the opinion that the making of the notes and mortgage to Kidder and his indorsement without recourse by Kidder and return to Frank L. was, in effect, the same as if made to bearer, or to Frank L. himself, and if negotiated by Frank L. to someone for a fair and valuable consideration, in good faith, and not for the purpose of hindering, delaying or defrauding his creditors, it would be good. Promissory notes, checks, and drafts are often made payable to bearer or to the maker, and when negotiated by the maker, are as saleable as if made to some second party. Commercial paper, so termed by bankers and brokers, is more often made to the order of the maker (myself) than in any other form, and then negotiated and transferred by delivery only. The consideration must pass at the time of delivery, not at the time the instrument is signed. Therefore the first proposition of the plaintiff is untenable.

"Second proposition: It is well settled in this state that the sale and transfer of a note secured by a mortgage carries with it the mortgage lien. The parties evidently intended, when they had Kidder to release the mortgage and deliver it to them, with the notes, to treat the release as an assignment for the purpose of releasing the record when the notes were paid by the maker. From the nature of the transaction, no other purpose could have been in the minds of the parties. Why make a mortgage and immediately release it if the release was to destroy it, to nullify it, to make it void or voidable? The release was a part of the mortgage, made at the same time and as a part of the same transaction. The parties must have intended it to serve some purpose other than to nullify the transaction, of which it was a part. It must have been intended by the parties to serve some purpose, or to assist in reaching the objective sought by the parties. When an objective is sought to be reached and a thing is done that furthers or assists in reaching the objective, it must be presumed that the act was done for the purpose and with the intent that the act would accomplish the results that it did accomplish. 'A person is presumed to intend the natural consequences of his acts,' is the same rule of logic but differently put. If the parties intended that the release of mortgage should act as an assignment for the purpose of releasing the record, then equity should look to the intent of the parties, rather than form. 'Equity regards substance rather than form.' The second proposition of the plaintiff is, therefore, untenable.

"Third proposition: A debtor may prefer one creditor over another, may sell his property, pledge it as collateral when he is indebted to another, if he acts in good faith, but in order to do either, he must receive a fair and valuable consideration for the transfer or sale of his property.

"Section 5271, C. O. S. 1921, provides:

"'Every conveyance of real estate or any interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability.'

"Under the above section of the statute, a fair and valuable consideration must have passed to Frank L. Pitney from Henry C. Pitney for the purpose of inducing Henry C. to loan Frank L. the $10,000. It must have been one of the inducing causes of Henry O. making the loan to Frank L. It is not necessary that it be the sole inducing cause, but it must have been one of the inducing causes. If the contract had been made already; that is, if the minds of the parties had met in agreement and Henry C. had agreed and had made the loan to his brother, Frank L., and Frank L. had accepted the money or credit in the bank on his note, then the trade or contract was completed, and anything done or given by Henry C. after the completion of the trade or contract would be a gift, and would not be for a valuable consideration or a fair consideration, while under the statute there must be both valuable and fair. The court found and the evidence supports the finding, that the notes, and mortgage securing them, was not one of the inducing causes of the loan to Frank L. by Henry C. The evidence shows that at the time of the transaction, neither Frank L. nor Henry C. had the notes and mortgage in mind, but that the notes and mortgage was an after consideration, an afterthought or (of) Frank L. and was a depositum, and that there was no fair and valuable consideration passing from Henry C. to Frank L. for the notes.

"The authorities cited by movant on the question of delivery are not in point as there is no question of delivery in the case, but a question of one of the essential elements of every contract, the meeting of the minds of the parties on the consideration.

The motion for a new trial should be overruled.

"It is, therefore, ordered, adjudged, and decreed that the motion for a new trial be, and the same is hereby, overruled, to which movant excepts, and in open court gives notice of appeal to the Supreme Court, asks and is allowed 90 days to make and serve case-made, plaintiff allowed ten days thereafter to suggest amendments thereto, case-made to be settled and signed upon five days' written notice by either party.

"George T. Arnett, Judge."

This is followed by the proceeding here with assignments of error and briefs. Some cases are cited in the brief of plaintiffs in error as to necessary proof in a case of this character, and extracts from the testimony are given, and the contention is made that the decision should have been the other way on the facts and findings of fact.

The brief on behalf of the defendants in error says in reference to the statement of facts in the brief of plaintiff in error:

"The statement at page 16 of said brief wherein it stated that John R. Russell and John F. Phelps were indebted to Frank L. Pitney in the sum of $5,000. was not admitted, but was a controverted issue"

—and urges that the judgment against Frank L. Pitney in McCurtain county, and the regularity of the sheriff's return, were not called into question. It was stated that the contention of the plaintiffs, made on the trial, was that the purported assignment of the notes to Henry C. Pitney was never in fact made or intended to be made, and that the mortgage and notes were made in fraud and were never received by him as collateral. It is further stated that the judgment rendered in McCurtain county on a foreign judgment rendered in Ogle county, Ill., on October 6, 1924, was on an indebtedness created prior to January 24, 1922. Counter argument is made upon the authorities cited by the plaintiff in error.

We have examined the entire record in this case. The original suit in this case was based on a foreign judgment that under our law was barred by limitation in one year from its rendition. The plaintiffs in the case acquired the judgment long after the execution of the mortgage notes and their delivery to Henry C. Pitney. An attachment was run in this state, and the land attached. The way the case was tried, the 'defects in the attachment proceeding were not brought out, apparently, and it was tried on the question of the rights of Henry C. Pitney by virtue of a delivery to him of the notes, secured by the mortgage, detailed in evidence, for the purpose of securing him for a $10,000 advance of money to take up a debt to the City National Bank of Dixon, Ill., of his brother, Frank L. Pitney, the bank at that time holding the $15,000 notes and mortgage as collateral to the $10,000 debt, paid by Henry C. Pitney for his brother, Frank L. Pitney. There does not appear in this case any evidence that there was any fraud in that transaction or intent to hinder or delay any creditor of anybody. Aside from making the amount of notes, secured by the original Kidder mortgage, greater than the actual value of the land, there does not seem to be anything of a fraudulent nature in that transaction. It was merely an effort, as testified to by the lawyer who drew the papers, to enable Frank L. Pitney to utilize his interest in these lands, which was $5,000, as collateral, and to borrow money in the usual course of business.

Under the findings of fact of the court below, pronounced in the order overruling the motion for new trial, Henry C. Pitney most clearly should have been allowed the taxes that he paid. Payment of taxes is usually regarded as strong evidence of interest. Under the admitted facts or uncontradicted evidence, he is entitled to the amount that was owed by Russell and Phelps to Frank L. Pitney as balance of the purchase price of the Illinois farm.

We do not think that the judgment of the court below, depriving Henry C. Pitney of all interest in the land, was warranted, either by its own findings or by the admission of the parties or by the credible testimony in the case. Clearly he is entitled to the taxes paid by him and the $5,000 unpaid to Frank L. Pitney on the Illinois farm that was traded for the land in controversy. The case should be reversed and remanded, with directions to the lower court to set aside the judgment heretofore entered in this case against plaintiffs in error, and to enter a decree finding that Henry C. Pitney has the first lien upon the property for the amount of taxes paid and for the amount of money that was due from Russell and Phelps as a balance of the purchase price of the Illinois property, which the evidence shows to be $5,000, together with the interest on $10,000 for one year at 5½ per cent., aggregating $5,550, and interest on the aggregate amount at 5½ per cent. from March 1, 1921.

We are further of the opinion, and hold, that the land should be sold under orders of the district court of McCurtain county, free from any claims of the parties to the litigation, and that the proceeds should be

applied: First, to the payment of the·expenses of entering the decree and making the sale; second, to the payment of any taxes due upon the land; third, to the reimbursement of Henry C. Pitney for the taxes paid by him; fourth, to the payment to Henry C. Pitney of the $5,550, with interest as above stated; fifth, to any costs paid by plaintiff below; sixth, to the debt of Frank L. Pitney to plaintiffs, the latter disposition being required by virtue of the disclaiming by Phelps and Russell, and the failure of the last grantee, Craddock, to appeal from this judgment. Plaintiffs in error are awarded costs of this proceeding against defendants in error, and the court below is directed to enter a decree in accordance with the views here expressed, and on demand of plaintiffs in error to cause the lands to be sold and proceeds distributed as above outlined.

CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. RILEY, J., concurs in conclusion. LESTER, C. J., absent.